UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Magnus Precision Manufacturing, Inc.,

                Plaintiff,

vs.                                              DECISION AND ORDER
                                                    08-CV-6325 CJS

TPS International, Inc., and
Universal-Automatic Corporation

                Defendants.
_____

**APPEARANCES**

For Plaintiff:                         Brian Laudadio, Esq.
                                               Gregory J. McDonald, Esq.
                                               Bond Schoeneck & King, PLLC
                                               345 Woodcliff Drive Suite 208
                                               Fairport , NY 14450
                                               (585) 362-4714

For Defendants:                    Michael S. Cerrone, Esq.
                                               Webster Szanyi, LLP
                                               1400 Liberty Building
                                               Buffalo , NY 14202
                                               (716) 842-2800

      **Siragusa, J.** This diversity contract case is before the Court on Defendants' motion (Docket No. 6) to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) and, in the alternative, 12(b)(6). Defendants contend that an exclusive choice of forum clause directs that any action must be brought in Waukesha, Wisconsin, and that in any event, Plaintiff has not made out a cause of action for breach of warranty. For the reasons stated below, the Court grants Defendants' application.

## BACKGROUND

The following facts are taken from the complaint, which the Court presumes, for the purposes of this motion, to be true, and draws all inferences favorable to the non-moving party. Plaintiff Magnus Precision Manufacturing, Inc. ("Magnus") is an Ohio corporation with its principle place of business in Phelps, New York. TPS International, Inc. ("TPS"), is a Wisconsin corporation, which does business in New York, and Universal-Automatic Corporation ("UA") is an Illinois corporation, which also transacts business in New York (collectively "Defendants").

Magnus produces precision parts, tools and components for a variety of industries, including aerospace, medical, recreational and industrial. UA designs and manufactures machine tools and TPS sells machine tools. In 2003, Magnus purchased two modular concept machines designed and manufactured by UA and which it purchased from TPS: an MMS-2 Machine and an MMS-3 Machine. The parties negotiated that the MMS-2 machine had to meet certain performance criteria for a specific component relating to a project Magnus was doing for Mossberg, including standard deviations, range data, Cp/CpK values and cycle time. Magnus started making payments for the MMS2-Machine and expected delivery in 2004.

In July 2005, the parties engaged in a formal run-off of the MMS-2 at UA's Chicago facility, after which Magnus determined the machine failed to meet required criteria for Cp/CpK values. Magnus and Defendants discussed how to remedy the substandard performance of the MMS-2 machine. Following those discussions, the parties signed the MMS Machines Acceptance and Reconciliation Agreement ("Reconciliation Agreement"), a copy of which is attached to the complaint. Paragraph 15 of the Reconciliation Agreement states that,

> Should the MMS-2 Machine, after TPS/UA having every reasonable opportunity to bring the Machine to an acceptable level, fail to achieve the agreed upon standards (*i.e.* cannot make good production parts), Magnus shall have the right to return the Machine to TPS/UA at no cost in exchange for a complete refund by TPS/UA to Magnus of all the prior progress payments made on the Machine.

The Reconciliation Agreement also makes reference in paragraph 17 to the "contract documents" ("[t]he extended warranty will be treated under the same terms and conditions as provided for in the contract documents."). In paragraph 28, the Reconciliation Agreement makes the same reference to the prior contract documents ("the extended warranty on the MMS-3, which will be treated in accord with the same terms and conditions of contract documents, will expire on October 21, 2007."). In paragraph 30, the Reconciliation Agreement states that "TPS and UA agree that there will be no further or additional compensation or payment to them arising out of the Purchase Orders relating to the MMS-2 and/or MMS-3 Machines for product or services supplied up through the date of this Agreement." Also in paragraph 30 of the Reconciliation Agreement is the following language:

> As contemplated by the parties, the rights and consideration afforded to Magnus by this Agreement, including the extended warranty on both Machines, shall provide the exclusive remedy for any and all past, present or future damages or expenses arising out of and any and all delivery delays or machine-related performance issues experienced or incurred by Magnus up to the effective date of this Agreement.

Magnus alleges that the MMS-2 machine was delivered in September 2005, and still does not meet the agreed-upon performance and tolerance standards. Thus, they allege breach of the Agreement and breach of warranty as causes of action against Defendants.

## STANDARDS OF LAW

On a motion for improper venue, the burden is on the plaintiff to establish proper venue by a preponderance of the evidence. Since the Court will rely on pleadings and affidavits, Magnus need only make a *prima facie* showing that venue is proper here. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

## ANALYSIS

Plaintiff argues that, since the Reconciliation Agreement does not specifically incorporate *all* of the prior contract terms, and only speaks to the warranty provision, the entire prior contract, with its choice of forum clause, is not applicable to Plaintiff's action brought only on the Reconciliation Agreement. The Court disagrees.

Magnus invokes New York law in its complaint (Compl. ¶¶ 3, 4.). Under New York Law, it is well established that, when determining the contents of a contract, the Court must ascertain the intent of the parties based on all the terms of the contract. "A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract." *Rentways, Inc. v. O'Neill Milk & Cream Co.*, 308 N.Y. 342, 347 (1955), *accord Westmoreland Coal Co. v. Entech*, *Inc.*, 100 N.Y.2d 352, 358 (2003) (citing Empire *Props. Corp. v. Manufactures Trust Co.*, 288 N.Y. 242, 248 (1942).) The Court finds that the Reconciliation Agreement makes sense only as an addendum or amendment to portions of the original contract between the parties, which is contained in the terms of sale, and that the Reconciliation Reconciliation Agreement incorporates the Terms of Sales from the Invoice. Thus, at least

for the purpose of deciding Defendants' 12(b)(3) motion, the Court finds that the contract between the parties and at issue in this lawsuit consists of the terms in the Invoice as well as the Agreement. Moreover, the terms of the Reconciliation Agreement fully incorporate the Terms of Sales from the Invoice, the original contract for the purchase of the MMS-2 machine. In particular, paragraph 17 of the Reconciliation Agreement provides that "[t]he extended warranty will be treated under the same *terms and conditions* as provided for in the contract documents" (emphasis added). The Terms and Conditions are not limited in paragraph 17 of the Reconciliation Agreement only to the warranty provision of the underlying contract. Had the parties wanted to do so, they could have provided that the incorporation was limited to only the warranty paragraph of the original contract.

The Court's research has revealed several cases discussing forum selection clauses contained in the terms of sale that have held to have been incorporated into the contact between the parties. *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9-10 (2d Cir. 1995) (cruise ticket reasonably communicated forum selection clause and was enforceable); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262 (JFK), 2004 WL 421793, *5 (S.D.N.Y. Mar. 5, 2004) (forum selection clause was plainly visible and enforceable); *Pietroske, Inc. v. Globalcom, Inc.*, 275 Wis. 2d 444, 453-54, 685 N.W.2d 884, 888-89 (Wis. App. 2004) ("the failure of the Globalcom representative to point out the forum-selection clause to Robert does not create procedural unconscionability that dooms the clause."); *Vitricon, Inc. v. Midwest Elastomers, Inc.*, 148 F. Supp. 2D 245, 248 (E.D.N.Y. 2001) ("Courts have consistently rejected the argument that forum selection clauses contained in pre-printed contracts are unenforceable."); *K.K.D. Imports, Inc. v. Karl*

*Heinz Dietrich GmbH & Co. Intern. Spedition*, 36 F. Supp. 2D 200, 203 (S.D.N.Y. 1999) (even though parties did not discuss or negotiate forum selection clause, it was enforceable); *Strategic Marketing & Communications, Inc. v. Kmart Corp.*, 41 F. Supp. 2D 268, 272 (S.D.N.Y. 1998) ("A forum selection clause can bind contracting parties even when the contract in question is a form contract and not subject to negotiation."); *but see Daisey Industries, Inc. v. K-Mart Corp.*, No. 96 Civ. 4211 AGS RLE, 1997 WL 642553, *3-4 (S.D.N.Y. Oct. 17, 1997) (forum selection clause is material alteration of terms of contract and must be specifically consented to.).

Magnus relies on *DeSola Group, Inc. v. Coors Brewing Co.*, 199 A.D.2d 141 (N.Y. App. Div. 1st Dept. 1993). In that case, the Appellate Division held that even if the agreement being reviewed did apply (which it found did not),

> the forum selection clause contained therein is unenforceable since the record is replete with allegations indicating that the entire Agreement was permeated with fraud. Plaintiff claims that the Agreement was not intended to constitute a binding contract between the parties and that defendant represented that the sole purpose of the Agreement was to provide a billing number for accounting purposes so that plaintiff could be paid. Lending credence to this argument is the fact, as stated above, that the Agreement does not describe the very services plaintiff had been hired to provide (i.e., market analysis), but rather, pertains to market research.

*DeSola*, 199 A.D.2d at 141. However, *DeSola* is distinguishable. Unlike the situation there, the Invoice terms and conditions here pertain to the very Machines purchased and to which the Reconciliation Agreement refers as the "contract documents." As the Court has previously determined, the Reconciliation Agreement incorporates the entire underlying contract's Terms of Sales. Thus, the forum selection clause is applicable to this lawsuit.

"The legal effect of a forum-selection clause depends in the first instance upon whether its existence was reasonably communicated to the plaintiff." *Effron*, 67 F.3d at 9. In the Terms and Conditions of Sales attached to the Invoice, the forum selection clause is set off in its own boldly-labeled paragraph drawing the reader's attention by using the term, "Exclusive Jurisdiction." It clearly sets forth mandatory use of the Circuit Court for Weukesha County, Wisconsin, "which shall have the exclusive jurisdiction over any disputes arising out of this transaction." (TPS International Terms and Conditions of Sales ¶ 25.) "The issue of reasonable notice is a question of law…." *Effron*, 67 F.3d at 9. Wisconsin is the home of TPS and, as was the case in Effron, no evidence before the Court reveals that TPS induced Magnus to accede to the forum selection clause by fraud or overreaching. "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). The clause here uses mandatory language and gives exclusive jurisdiction to the court named in Wisconsin and includes any dispute arising out of the parties' contract. Finding no legal basis to do otherwise, the Court must give effect to the forum selection clause. However,

> even if the district court finds the existence of a contract and a forum-selection clause, it retains jurisdiction over the action inasmuch as it must enforce the forum-selection provision absent a clear showing…that enforcement would be "unjust" or that the clause is "invalid for such reasons as fraud or overreaching."

*Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509-10 (2d Cir. 1998) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).

Magnus has raised no argument that enforcement of the forum selection clause would be unjust. The Court will, therefore, enforce the forum selection clause.

## CONCLUSION

For the reasons above, Defendants' motion (Docket No. 6) to dismiss the complaint is granted without prejudice to such claims being re-filed against Defendants in the Circuit Court for Waukesha County, Wisconsin.

IT IS SO ORDERED.

Dated:   February 9, 2009
        Rochester, New York

                ENTER.

                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Court